# DISTRICT COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

**OMOLARA SIMMONDS,**
as mother and next of friend to DH,
a minor,

        **Plaintiff,**

  v.

**DAVID EVANS, PHOENIX SERVICES,**
**and PEDRO RIVERA,**

        **Defendants.**
_____

1:22-cv-00051-WAL-EAH

**TO:**      **Lee J. Rohn, Esq.**
            **Jennifer Sue Koockogey, Esq.**
              *For Plaintiff*
            **Kyle R. Waldner, Esq.**
              *For Defendants Evans and Phoenix Services*
            **Douglas L. Capdeville, Esq.**
              *For Defendant Rivera*

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff Omolara Simmonds's motion for sanctions, filed on September 26, 2023 by Attorney Lee J. Rohn. Dkt. No. 122. Attorney Rohn requests that Defendant Phoenix Services ("Phoenix") and its attorney, Kyle R. Waldner, Esq., be sanctioned for failure to provide a copy of Phoenix's excess insurance policy during discovery. The Court held a hearing on the sanctions motion on October 10, 2023 and ruled from the bench and amended the current Scheduling Order as a result. This Memorandum Opinion and Order memorializes the rulings at the hearing, amends and clarifies some of

*Simmonds v. Evans*
1:22-cv-00051-WAL-EAH
Memorandum Opinion and Order
Page 2

those rulings, and explains the Court's reasoning. The Court will issue an amended scheduling order once this Memorandum Opinion and Order is docketed.

## BACKGROUND

In August 2022, Plaintiff Omolara Simmonds filed a complaint in the Superior Court of the Virgin Islands on behalf of her minor son, D.H., against Defendants Phoenix, David Evans, Excel Construction and Maintenance VI, Inc., f/k/a/ Sun Constructors, Inc. ("Excel"), and Pedro Rivera. Dkt. No. 1-1. The complaint alleged that, in September 2019, Phoenix, a Texas corporation, and/or Excel, a Virgin Islands corporation, through a Phoenix management employee, Evans, rented a vehicle on St. Croix for Rivera, a Phoenix employee. Dkt. No. 1-1. Rivera, while driving drunk, failed to stop at a stop sign and ran into D.H. and then tried to flee the scene. *Id*. D.H. suffered severe injuries from the accident. *Id*.

Phoenix and Evans removed the case to federal court in October 2022, on the basis of diversity jurisdiction,[1] Dkt. No. 1, and Phoenix and Rivera answered.[2] Dkt. Nos. 6, 7. In November 2022, Attorney Waldner filed a notice of service of Phoenix's and Evans' Rule 26 initial disclosures,[3] Dkt. Nos. 20, 21, and Attorney Rohn filed a notice of Simmonds's initial

---

[1] In removing the case and asserting diversity jurisdiction, Phoenix and Evans, both Texas residents, alleged that Simmonds, a Virgin Islands resident, fraudulently joined Excel, a Virgin Islands corporation, in an attempt to avoid removal to federal court. Dkt. No. 1. The parties later stipulated to dismiss Excel. Dkt. No. 43.

[2] Phoenix's answer was filed only on its behalf, and did not indicate it was filed on behalf of Evans. There is no indication on the Court's docket that Defendant Evans filed a separate answer.

[3] In the instant motion for sanctions, Attorney Rohn asserts that these initial disclosures included the declaration page for an Everest National Insurance Policy, indicating the amount of insurance available was one million dollars. Dkt. Nos. 122 at 2, 122-1 (Declaration).

disclosures, Dkt. No. 25. Following the initial conference in December 2022, the Court issued a scheduling order, Dkt. No. 48, and the parties engaged in discovery. On January 27, 2023, Simmonds's attorney filed a notice of service of requests for interrogatories and for production of documents. Dkt. Nos. 59-67. In the sanctions motion, Attorney Rohn stated that one of the requests for production, No. 13, sought copies of "all insurance policies, including, but not limited to general, employment, auto, umbrella, excess policies, potentially covering the Plaintiff's claim or providing a defense. . . against Plaintiff's claim." Dkt. No. 122 at 2. On February 27, 2023, Attorney Waldner filed a notice of service of responses to Plaintiff's discovery requests. Dkt. Nos. 80, 81. As Attorney Rohn indicated at the sanctions hearing, in response to request for production 13, Phoenix objected that the request was not relevant, and referred to the declaration page from the one-million-dollar insurance policy. Dkt. No. 122-1.

The Court issued a First Amended Scheduling Order in June 2023, requiring, inter alia, written discovery to be completed by August 30, 2023, mediation to be completed by September 30, 2023, Simmonds's experts to be named and copies of their opinions served by October 17, 2023, and Defendants' experts to be named and copies of their opinions served by November 30, 2023. Dkt. No. 105. On July 10, 2023, Attorney Waldner filed the First Supplemental Responses to Plaintiffs Discovery Requests on behalf of Evans and Phoenix Services. Dkt. Nos. 107, 108.

On September 13, 2023, the Court held a status conference at which the parties advised the Court that discovery was complete and that mediation would occur on September 25, 2023. Dkt. No. 116. The parties believed that the case was proceeding

*Simmonds v. Evans*
1:22-cv-00051-WAL-EAH
Memorandum Opinion and Order
Page 4

smoothly and did not foresee any issues in complying with the deadlines in the First Amended Scheduling Order. *Id.* Subsequently, the mediator filed a report indicating that the mediation had been unsuccessful and was recessed until further discovery could be conducted. Dkt. No. 120.

On September 26, 2023, Simmonds, through Attorney Rohn, filed the instant "Motion for Sanctions for Blatant Violation of Rule 26's Requirement for Voluntary Disclosures" against Phoenix and its counsel, alleging that they violated the Rule 26 requirements on voluntary disclosures. Dkt. No. 122. Attorney Rohn asserted that when Phoenix filed its initial disclosures, the only document it provided was the declaration page for an insurance policy which had a one million dollar limit. Subsequently, Plaintiff served her demands for production, and Demand No. 13 requested production of copies of all insurance policies potentially covering Simmonds's claim. *Id.* at 2. But Phoenix responded to this demand by objecting on relevancy grounds and referred to the same $1 million policy for which it had provided the declaration page. *Id* Attorney Rohn contends that, when Phoenix made these representations, it understood the severity of D.H.'s injuries and the expenses associated with those injuries due to Simmonds's answers in prior interrogatories. *Id.* at 2-3.

However, it was only during the mediation on September 25, 2023 that Attorney Rohn challenged Phoenix's insurance representative and Attorney Waldner, stating that she did not believe the disclosure of insurance was truthful and demanded they disclose whether there was any excess coverage. Attorney Waldner declined, and Attorney Rohn refused to continue mediation until she received an answer. *Id*. at 4-5. She then learned for the first time that there was a $10 million excess insurance policy. *Id.* at 5. Attorney Waldner sought to

*Simmonds v. Evans*
1:22-cv-00051-WAL-EAH
Memorandum Opinion and Order
Page 5

excuse his failure to disclose the policy by saying that he had not "received a demand amount yet." *Id*. at 5. As of the date she filed the motion for sanctions (September 26, 2023), Attorney Rohn had not received a copy of the excess policy. *Id.*

Attorney Rohn claimed that Phoenix's failure to disclose was a violation of Rule 26's requirement for voluntary disclosures. She cited *Palacino v. Beech Mountain Resort, Inc.*, No. 1:13CV334, 2015 WL 8731779, at *4 (W.D.N.C. Dec. 11, 2015), where the court sanctioned the defendant and its attorney for failure to comply with Rule 26 by failing to disclose a $10 million umbrella policy on the grounds that the attorney bore ultimate responsibility to ensure that reasonable inquiry was made and that the information provided in the initial disclosures was complete and accurate.

Attorney Rohn explained that, in cases like this, with damages in excess of $1 million, a Plaintiff's attorney has to maximize a client's recovery by taking limited depositions to constrain litigation costs, and by relying only on treating physicians as to causation, prognosis, and future losses because the case cannot afford retained experts who could increase the recovery. If there is no insurance to pay those higher costs, then hiring experts was a waste of funds. *Id.* at 3-4. Rule 26(g)(3) allowed for sanctions for failure to disclose all insurance policies that may be applicable, and permitted a court to "model its sanctions in a broad manner." *Id.* at 6. As a result of the failure to "truthfully disclose" the excess policy, Attorney Rohn requested that, as a sanction, Plaintiff be granted an extension of 60 days to retain experts that were not economically feasible to retain previously, to prepare expert reports, and to depose additional fact witnesses *Id.* She suggested that mediation could take place thereafter. *Id.* If the case did not settle, she proposed that Defendants be given 30 days

*Simmonds v. Evans*
1:22-cv-00051-WAL-EAH
Memorandum Opinion and Order
Page 6

to disclose experts followed by 45 days to complete expert depositions, followed by dispositive and *Daubert* motions. *Id.* at 7.

In its opposition, Phoenix did not dispute that the excess insurance policy was omitted from its initial disclosures. Dkt. No. 128 at 1-2. Attorney Waldner claimed that the failure to disclose was inadvertent, as he learned of the existence of the policy only on September 5, 2023 and received a copy on September 25, 2023. *Id.* at 2. He claimed that Rule 37(c)(1) gave the court discretion to impose sanctions "unless the Court determines the non-disclosing party's failure was substantially justified or is harmless." *Id.* at 3. He stated that a court should consider a number of factors in determining whether a violation is harmless, including "prejudice or surprise to the opposing party, the ability of the party to cure that prejudice, the likelihood of disruption at trial, and the bad faith or willfulness of the violating party." *Id.* Here, Attorney Rohn did not allege how the specific litigation activities she failed to undertake (depositions and retaining experts) were a result of the omission of the excess insurance policy from Phoenix's initial disclosures, and thus no harm resulted from the oversight. *Id.* at 5-6.

Attorney Waldner conceded that the situation in *Palacino* was similar to the one at hand and that there were Rule 26 violations in that case, but the court in *Palacino* focused on the harm that actually occurred and declined to reopen discovery because the plaintiffs had overstated the extent of their harm. *Id.* at 5. He contended that Attorney Rohn did not cite a single case where discovery was reopened as a remedy for failure to disclose an insurance policy, and failed to show why it would not have been economically feasible to retain experts and take additional fact depositions earlier. *Id.* at 5-6.

In her reply, Attorney Rohn reiterated that retention of experts was the most expensive phase of trial preparation, and Simmonds made the difficult decision to forgo this expensive strategy so that all available funds would be directed to D.H.'s medical care. Dkt. No. 129, at 3. In addition, she did not depose certain liability witnesses because of the limited amount of insurance, and this decision made it unlikely that the matter would have gone to trial. She also reiterated that Rule 26 required an attorney to initially investigate any insurance coverage that may be applicable and that the request for insurance coverage was made again in a Demand for Production. *Id.* at 3, 5. She believed the failure to disclose the policy was not inadvertent. *Id.* at 6. The purpose of the requested sanctions was simply to put the Plaintiff in the position that she would have been in if the violation had not occurred, "in addition to any other sanctions this court sua sponte deems appropriate." *Id.* at 3, 6. Attorney Rohn added that the sanctions she seeks here are those under Rule 26(g)(3), not those under Rule 37(c)(1). *Id.* at 5.

The Court set a hearing on the motion for October 10, 2023, at which time it would also decide whether it would modify any deadlines in the First Amended Scheduling Order. Dkt. No. 127.

At the hearing, Attorney Waldner reiterated that he did not intentionally withhold the excess policy. While his client had always known of the existence of the excess policy, he had failed to exercise due diligence in investigating Phoenix's insurance policies because he assumed that there were no additional policies other than the one-million-dollar policy under which he was hired. He further stated that he did not present the November 2022 initial disclosures to Phoenix and that Phoenix had not reviewed the responses to the

*Simmonds v. Evans*
1:22-cv-00051-WAL-EAH
Memorandum Opinion and Order
Page 8

requests for production before he signed them. He also conceded that a failure to accurately disclose insurance information may have an effect on an opposing party's litigation strategy.

The Court questioned Attorney Waldner on why he failed to disclose the policy after he learned of its existence on September 5, 2023—eight days before the September 13, 2023 status conference with the Court, and twenty days prior to the September 25, 2023 scheduled mediation He stated that he had no intent to mislead Simmonds and that he was planning to disclose the existence of the policy at mediation. Attorney Rohn rejected this explanation, reiterating that she had to ask him about the existence of an excess policy at mediation before it was disclosed. Attorney Rohn orally requested attorney's fees for having to bring the present motion for sanctions, along with any expediting fees necessary for expert reports.

The Court granted Attorney Rohn's motion for sanctions from the bench. It ordered Phoenix and Evans to pay Simmonds's portion of the cost of mediation along with Simmonds's attorney's fees associated with the sanctions motion, and to submit an affidavit of those fees and costs by October 20, 2023. Phoenix would have an opportunity to object. The Court further ordered Phoenix to supplement all discovery responses by October 24, 2023, and amended the fact, expert discovery, and other deadlines remaining in this case.

## DISCUSSION

### I. Applicable Legal Principles

Rule 26 of the Federal Rules of Civil Procedure requires parties to exchange certain initial disclosures without waiting for a discovery request from other parties. Fed. R. Civ. P. 26(a)(1). Included among those initial disclosures is the requirement that a party must

provide to the other parties "for inspection and copying under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). While a defendant is not obligated to conduct an exhaustive search, it is obligated under Rule 26 to disclose the information reasonably available to it. Rule 26(a)(1)(E).

Rule 26 establishes that by signing a discovery disclosure, an attorney or party certifies that after a "reasonable inquiry," the disclosure is "complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1). The rule also provides:

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3). "This mandatory language means there is no requirement that the [parties] have asked for the imposition of sanctions," as district courts have the "duty . . . to determine whether to impose sanctions even if the parties had not invited their attention to the issue." *Food Team Int'l, Ltd. v. Unilink, LLC*, 595 F. App'x 146, 151 (3d Cir. 2014) (internal quotation marks and alterations omitted).

Additionally, Rule 26 provides that if a party discovers that a disclosure is incomplete or incorrect, the party must supplement that disclosure "in a timely manner." Fed. R. Civ. P. 26(e)(1).

*Simmonds v. Evans*
1:22-cv-00051-WAL-EAH
Memorandum Opinion and Order
Page 10

## II. Application

At the October 10, 2023 motion hearing, Attorney Waldner repeatedly admitted that he should have been "more diligent" in providing the excess policy to the Plaintiff. He had assumed, at the beginning of the case, that the only insurance policy at issue was the $1 million policy under which he was hired. Apparently as a result, he did not inquire of Phoenix or Evans, either when making initial disclosures in November 2022 or when responding to the requests for production in February 2023 (one of which included an explicit request to produce additional or excess insurance policies) whether any excess policies existed. Compounding this failure to inquire, Attorney Waldner did not ask Phoenix to review the responses to the November initial disclosures or review the February 2023 responses to the requests for production of documents prior to signing the certifications and serving them on Simmonds. Attorney Waldner acknowledged the excess policy should have been contained in those responses, and that he should have supplemented discovery responses once he found out—on September 5, 2023—that such a policy existed. He did none of these things. Nor did he inform the Court or Plaintiff during the September 13, 2023 status conference that the excess policy existed. He waited until the parties were actually engaged in mediation when, apparently under pressure from Attorney Rohn, and in the presence of Phoenix's insurance representative, he informed her of the excess policy—20 days after he had learned of it. At that point, the August 30, 2023 deadline for discovery had already passed.

In addition, Attorney Waldner admitted that his client had always known of the existence of the excess policy; again, he asserted that the failure to disclose lay at his feet

*Simmonds v. Evans*
1:22-cv-00051-WAL-EAH
Memorandum Opinion and Order
Page 11

since he did not have a conversation about it with his client at the Rule 26 or Rule 34 stage, and the client presumed Attorney Waldner had all of the information.

Rule 26(g)(1) requires that every initial disclosure under Rule 26(a) and every discovery response—such as responses to requests for production under Rule 34—must be signed by an attorney of record, attesting "to the best of the person's knowledge, information and belief, formed after reasonable inquiry," that the disclosures are complete. Fed. R. Civ. P. 26(g)(1). Absolutely nothing about Attorney Waldner's actions here satisfies that rule. He was operating on completely unfounded assumptions that the company had no excess policy. But instead of seeking to confirm that assumption, he disregarded his duty to make a reasonable inquiry about this matter.[4] Not only did he fail to make a reasonable inquiry at the initial disclosure stage, but he also failed to make a reasonable inquiry at the response to the request for production stage. *See Optronic Techs. Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No. 16-cv-6370, 2020 WL 2838806, at *5-6 (N.D. Cal. June 1, 2020) (attorney failed to conduct reasonable inquiry by not making reasonable effort to ensure that defendant produced all responsive documents); *Littler v. Martinez*, No. 16-cv-472, 2020 WL 42776, at *29 (S.D. Ind. Jan. 1, 2020) (concluding that attorney failed to conduct reasonable inquiry when he did not ask defendants whether certain relevant evidence existed).

---

[4] *See* Advisory Committee's 1983 Note on subd. (g) of Fed. R. Civ. P. 26 ("The duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11.").

Nevertheless, he went ahead and certified that the responses were complete without any objective and reasonable basis to do so. That was his duty, and he failed to fulfill that duty. As indicated above, Rule 26(g) provides sanctions for improper certification—if an attorney "without substantial justification" violates the certification rule. Fed. R. Civ. P. 26(g)(3). "Substantial justification" has been interpreted to mean "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance." *Vay v. Huston*, No. CV 14-769, 2016 WL 1408116, at *5 (W.D. Pa. Apr. 11, 2016).[5] "The non-producing party shoulders

---

[5] The Court notes that Plaintiff sought sanctions pursuant to Rule 26(g) and explicitly stated she was not seeking sanctions under Rule 37(c)(1). Dkt. No. 129 at 5. Attorney Waldner and Phoenix were the ones to interject that the standard under Rule 37(c)(1) was applicable, essentially ignoring Rule 26(g). Dkt. No. 128 at 3-4. But there are significant differences between sanctions under Rule 26(g) and Rule 37(c). The plain language of Rule 26(g) *requires* the court to impose sanctions if the violation was committed without "substantial justification." Fed. R. Civ. P. 26(g)(3). Sanctions under Rule 37(c) *may* be imposed unless the failure to disclose was "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). Some courts, particularly considering sanctions under both Rule 26(g) and Rule 37(c), have appeared to import a "harmlessness" standard into a Rule 26(g) analysis. *See Singer v. Covista, Inc.*, No. CIV.A. 10-6147, 2013 WL 1314593, 9 (D.N.J. Mar. 28, 2013) ("The Court cannot impose sanctions pursuant to rule 26(g) if it finds that the non-compliant party's failure was substantially justified or harmless."). But sanctions under each Rule are distinct. To the extent some courts have imported a harmlessness standard under Rule 26(g) or conflated Rule 37(c)'s harmlessness standard with Rule 26(g), this Court declines to follow such an approach. In addition, the phrase providing that failure to disclose should be harmless in order to assess sanctions under Rule 37(c)(1) is set out in the context of a party that did not disclose the information not being able to use it in a motion, at a hearing, or at trial. That is not the procedural posture here. For these reasons, to the extent Attorney Waldner asserted in his opposition that Simmonds had to show that the failure to disclose the insurance policy was harmless, the Court rejects that argument.

the burden of proving substantial justification for its conduct[.]" *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002).

Here, no possibility exists that reasonable people might differ concerning whether Attorney Waldner had an obligation to make a simple inquiry of his client as to the existence of any additional insurance policy (whether excess, or umbrella, or any other) that might satisfy all or part of a possible judgment. It is explicitly spelled out as an obligation under Rule 26(a)(1)(A)(iv). Plaintiff's Request for Production 13 also sought this specific information. But Attorney Waldner, by his own admission at the hearing, did not even inquire of his client and did not submit his responses for their review, for them to be able to point out that they did, in fact, have an excess policy. That is the height of unreasonableness. Attorney Waldner was nowhere near to shouldering his burden of proving substantial justification for his conduct. *Tolerico*, 205 F.R.D. at 175. The Court concludes that he was not substantially justified in certifying these discovery responses and thus sanctions *must* be assessed per Rule 26(g)(3).

According to that Rule, the Court may impose such sanctions on counsel, the party, or both. *See Stevens v. Sullum*, No. 20-cv-1911, 2023 WL 3311850, at *4 (M.D. Pa. May 8, 2023) ("Rule 26(g) imposes an absolute obligation of reasonable inquiry on counsel, and *requires* imposing sanctions on *either or both counsel and parties* where discovery responses are unreasonable or otherwise inconsistent with the Federal Rules of Civil Procedure.") (emphasis added). The Court finds Attorney Waldner's conduct particularly egregious here as he completely abjured his responsibilities in this violation of Rule 26. He was the one who twice signed a discovery certification that the information he was serving on the Plaintiff

complete, a conclusion that he was to have reached after a "reasonable inquiry." But that was completely inaccurate. And while the Court does not find that Attorney Waldner acted in bad faith, the fact that he learned about the policy on September 5, 2023, appeared at a hearing on September 13, 2023, and did not divulge its existence until September 25, 2023, and then only in the presence of the insurance representative and after being confronted by Attorney Rohn during the actual mediation, is particularly concerning. Attorney Waldner had no explanation for his failure to inform Attorney Rohn at this juncture, intoning only that he should have been more diligent, which is no explanation at all.

While the Court stated at the hearing that it would sanction Phoenix and Evans, it misspoke. It meant to say that it would sanction Phoenix and Attorney Waldner, as Plaintiff sought sanctions against both of them and not against Defendant Evans.

And to the extent it indicated at the hearing that it would sanction Phoenix, the Court has sua sponte reconsidered that ruling. Attorney Waldner stated that Phoenix had always known that it possessed the $1 million initial policy and the $10 million excess policy, and added that both policies were purchased from the same insurer. It is self-evident that a company involved in business should have known the importance of informing its attorney that it had multiple insurance policies to cover an accident at issue. But nothing before the Court indicates that Phoenix knew that Attorney Waldner had not disclosed the excess policy to the Plaintiff. And during the hearing, Attorney Waldner fell on his sword numerous times, acknowledging his lack of diligence and that the Rule 26 discovery failure is laid at his feet. In considering the relative culpability of Phoenix and Attorney Waldner—the two entities against whom Plaintiff sought sanctions—the Court concludes that Attorney Waldner should

*Simmonds v. Evans*
1:22-cv-00051-WAL-EAH
Memorandum Opinion and Order
Page 15

be the sole entity shouldering the sanctions in this case. The Court therefore amends the oral ruling announced at the hearing, that it would sanction Phoenix and Attorney Waldner[6] and will sanction only Attorney Waldner.

As to what Rule 26(g) sanction to impose, "this is left to the Court's discretion; the Rule merely provides that the sanction be 'appropriate,'" *id.*, and that the expenses, which may include attorney's fees, be "reasonable" and be caused by the violation. Fed. R. Civ. P. 26(g)(3). In *Newill v. Campbell Transportation Company, Inc.*, No. 12-cv-1344, 2013 WL 6002349, at *7 (W.D. Pa. Nov. 12, 2013), the court held that defendant's violation of its duty to undertake a reasonable investigation to uncover potentially relevant documents warranted a Rule 26(g) sanction, and approved the re-opening of a deposition and imposed the concomitant costs, including attorney's fees; *see also* 8A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2052 (3d ed.) ("This sanction may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.").

The Court will sanction Attorney Waldner under Rule 26(g) by requiring him to pay Plaintiff's reasonable costs and attorney's fees for having to bring the motion for sanctions (including the hearing) as Attorney Rohn orally requested in the October 10 hearing. These fees were "caused by" the discovery violation. Fed. R. Civ. P. 26(g)(3).

The Court will order an additional sanction for the Rule 26(g) violation. Plaintiff did not know, through the entire discovery period, that Phoenix had an excess insurance policy.

---

[6] As indicated above, the Court misspoke when it stated it would sanction Phoenix and Evans, as it meant Phoenix and Attorney Waldner.

*Simmonds v. Evans*
1:22-cv-00051-WAL-EAH
Memorandum Opinion and Order
Page 16

Her litigation strategy, as well as her mediation strategy, was based on the $1 million policy disclosed by Phoenix. Attorney Rohn entered mediation discussions unaware of the excess policy, although by that time Attorney Waldner had known for almost three weeks of its existence. As a result, Attorney Rohn was in no position to assess what might be a fair settlement figure at mediation. Attorney Waldner, though, knew that he had not disclosed the excess policy. But he chose to proceed to mediation anyway, and the mediation became a meaningless exercise. Consequently, Attorney Waldner should also bear Plaintiff's costs of the September 25, 2023 mediation as those costs were "caused by" the discovery violation. Fed. R. Civ. P. 26(g)(3); *Food Team Int'l, Ltd.,* 595 F. App'x at 151; *Palacino,* 2015 WL 8731779, at *1 ("The entire purpose of Rule 26(a)(1) is to provide for the disclosure of basic information needed in most every case in order to . . . make an informed decision as to settlement.").

The Court will deny Attorney Rohn's request, made at the October 10 hearing, to include the cost of expediting expert reports as a sanction. While the Court will grant an extension of deadlines to complete fact discovery and provide expert reports. Plaintiff does not otherwise explain why expert reports will have to be expedited or how the discovery violation supports such a request. Fed. R. Civ. P. 26(g)(3).

In sum, Simmonds must submit the requisite support for reasonable attorney's fees and costs concerning the sanctions motion as well as the costs for her portion of mediation by October 20, 2023. Attorney Waldner may file an objection by November 3, 2023 and Attorney Rohn may file a reply by November 10, 2023.

The Court further concludes that in order to address the problems created by the late disclosure of the excess insurance policy—disclosure that occurred after fact discovery closed—the Court will reopen that discovery to permit Plaintiff to depose the additional fact witnesses Attorney Rohn stated that she demurred from taking due to the coverage limitations on the only insurance policy she was informed applied to this case.[7] It is only fair that she have an opportunity to proceed as she would have proceeded if she had known of the existence of the excess policy from the beginning of this case. The Court will also extend the expert discovery deadlines, as requested by Attorney Rohn, to enable Plaintiff to retain additional experts that she indicated she would have considered if she had known about the excess policy and had not been so concerned with spending a sizeable amount of the original policy limit in litigation costs as opposed to maximizing the injured child's damages recovery. In his opposition, Attorney Waldner sought to cast blame on Attorney Rohn for not explaining why the requested additional depositions could not have been taken during the discovery period, discounting what he characterized as her "self-serving" statements as to why she opted not to take those depositions or retain additional experts. Dkt. No. 128 at 5-6. However, at the hearing, in response to questioning from the Court, Attorney Waldner conceded that the value of the insurance policy and how much could be paid on a judgment

---

[7] Although Attorney Rohn considered reopening discovery and amending the deadlines in this case as "sanctions" under Rule 26(g), the Court does not consider this relief to be a "sanction" against Defendant Phoenix. A sanction is something that penalizes another party, *see* "sanction," Black's Law Dictionary (11th ed. 2019). Here, extending deadlines and providing Defendants concomitant extensions, does not sanction Phoenix, as Plaintiff asserts this is how she would have proceeded if she had known about the excess policy from the beginning of the case, and the Court will provide Phoenix with sufficient time to retain rebuttal experts.

could be important to a plaintiff in strategizing how to proceed in a case. He requested that the rebuttal expert deadline be extended for a commensurate amount of time, which the Court will permit. The new deadlines will be set forth in an amended scheduling order to be filed after this Memorandum Opinion and Order is docketed.

## CONCLUSION

Based on the analysis set forth above, it is now hereby **ORDERED**:

1. Attorney Rohn's "Motion for Sanctions For Blatant Violation of Rule 26's Requirement For Voluntary Disclosures," Dkt. No. 122, is **GRANTED IN PART AND DENIED IN PART**.

2. Simmonds's oral motion is **GRANTED** to the extent that Attorney Waldner shall pay Simmonds's reasonable attorney's fees and costs for Attorney Rohn's "Motion for Sanctions For Blatant Violation of Rule 26's Requirement For Voluntary Disclosures," which shall include the time spent in the October 10, 2023 motion hearing.

3. Attorney Waldner shall also pay Simmonds's portion of the September 25, 2023 mediation costs.

4. The motion is **DENIED** to the extent that the Court will not assess a sanction for expediting expert reports. The motion is also **DENIED** to the extent that it requested sanctions against Defendant Phoenix Services.

5. Attorney Rohn shall submit an affidavit supporting the aforementioned reasonable attorney's fees and costs by **October 20, 2023**.

6. Attorney Waldner may file an opposition by **November 3, 2023** and Attorney Rohn may file a reply by **November 10, 2023**.

7. Phoenix Services shall supplement all discovery responses by **October 24, 2023**. Failure to do so may subject it to sanctions.

8. The remaining deadlines in the First Amended Scheduling Order, Dkt. No. 105, shall be extended in a separate order.

                                                    ENTER:

Dated: October 17, 2023                         /s/ Emile A. Henderson III
                                                            EMILE A. HENDERSON III
                                                            U.S. MAGISTRATE JUDGE